IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 4:24-cr-2 |
| | ) | |
| BREON CLEMONS, | ) | |
| | ) | |
| Defendant. | ) | |

POSITION OF UNITED STATES ON SENTENCING

The United States of America – by and through its attorneys, Erik S. Siebert, United States Attorney for the Eastern District of Virginia, D. Mack Coleman and Brian J. Samuels, Assistant United States Attorneys – hereby represents that it has reviewed the probation office's presentence investigation report (hereinafter "PSR") and that it does not object to any of the facts or conclusions therein. For the reasons to follow, and the reasons to be offered during the sentencing hearing, the United States respectfully requests a sentence within the advisory guideline range, plus 24 months consecutive. A guideline sentence is necessary to promote respect for the law, serve deterrence, and account for the seriousness of the crimes of conviction as well as the defendant's failure to accept responsibility.

PROCEDURAL HISTORY

On January 16, 2024, a grand jury in the Newport News Division returned an indictment, charging the defendant with multiple counts of Wire Fraud (Counts 1 - 4); Engaging in Monetary Transactions in Criminally Derived Property (Counts 5 – 12); and Aggravated Identity Theft (Counts 13 – 16). On July 22, 2024, the defendant pled guilty to Counts 5 and 13. The Court accepted his plea, and the sentencing was scheduled for February 12, 2025.

OFFENSES OF CONVICTION

As detailed in the Statement of Facts and the PSR, the defendant's convictions stem from an identity theft and credit fraud scheme executed in 2021 and 2022. In the course of the scheme, the defendant stole the identities of his friends and associates and used their personally identifying information without their consent to apply for money and lines of credit that he used for his business and personal expenditures.

1. Identity Theft Victim P.C.

In or about November of 2017, the defendant and P.C. were working at a car dealership. The defendant told P.C. about his plans to start an organic produce company. The defendant later formed GoGreen Farms and Greenhouses, Inc., GoGreen Farms, Inc., and GoGreen Farms, LLC, (collectively hereinafter "GoGreen Farms") and offered employment to P.C. In or about February of 2020, P.C. began working at GoGreen Farms in charge of logistics.

The defendant had access to the personally identifying information of employees like P.C. in his capacity as the owner of GoGreen Farms. On or about November 12, 2021, the defendant applied for a line of credit in the approximate amount of $25,000.00 from Bluevine Inc. using P.C.'s personally identifying information without his consent. As part of the loan application process, the defendant digitally signed a financing and security agreement and guaranty agreement, forging P.C.'s signature on both documents. Bluevine Inc. advanced approximately $30,390.00 to the defendant on the line of credit opened using P.C.'s personal information. P.C. did not consent to or benefit from the line of credit opened by the defendant with Bluevine Inc.

2. Identity Theft Victim P.C.

The defendant and C.F. lived in the same neighborhood for years, and she considered him a friend. Sometime in 2020, C.F. and the defendant discussed his new organic foods business,

GoGreen Farms. The defendant asked C.F. if she wanted to invest in the company. C.F. subsequently invested $10,000.00. After the investment, the defendant asked C.F. if she would like to be an unpaid officer or director of the business, and C.F. agreed. The defendant told C.F. that he needed a copy of her driver's license for the articles of incorporation, so C.F. provided it.

A document titled "Unanimous Consent Proceedings of the Shareholders of Go Green Farms, Inc." was subsequently given to C.F. by the defendant. Based on her investment, it showed her ownership in GoGreen Farms being five (5) shares, with the remaining shares distributed to P.C. (50 shares), the defendant (320 shares), and the remainder were reserved to the corporation (125 shares).

In or about November of 2021, the defendant told C.F. that the company needed a revolving line of credit. He asked C.F. if she would be a co-applicant. She stated that she would consider this but would first need to see the terms of the credit being sought and would also want to review the books for GoGreen Farms before she would agree. During discussions about the line of credit, the defendant asked C.F. for her Social Security number, and she provided it to him. The defendant later told C.F. that she would not need to co-sign for a line of credit. Instead, the defendant claimed that he would be receiving a loan from a professional basketball player that he knew.

In or about March of 2022, C.F. received a call from Capital One. She was told that she was late on payments. C.F. had a Capital One credit card, but it was up to date on payments. C.F. began asking questions of Capital One and determined that the card in question was a joint account in the names of C.F. and GoGreen Farms. As with P.C., C.F. did not consent to or benefit from any credit cards or lines of credit opened by the defendant using her personally identifying information.

3. <u>Discovery of the Fraud</u>

C.F. contacted Individual 1, an acquaintance who worked at GoGreen Farms and asked about the credit card. Individual 1 confirmed that the card existed and indicated that GoGreen Farms also utilized an American Express card in C.F.'s name, and a line of credit with a lender called TVT Capital that was also in C.F.'s name.

C.F. conferred with Individual 2, another employee of GoGreen Farms, who stated that everyone needed to meet with the defendant to discuss the company's financial issues and sources of funding. C.F., P.C., Individual 1, and Individual 2 met with the defendant. C.F. confronted the defendant about the Capital One card. The defendant denied taking out lines of credit in her name. C.F. demanded that the defendant give her the credit cards, and the defendant removed the Capital One and American Express card from his pocket and gave them to her.

The balance of the Capital One credit card in the name of C.F. and GoGreen Farms was over $100,000.00 when it was discovered by C.F. P.C. later discovered that the defendant had also taken out the line of credit with Bluevine Inc.

The balance of the American Express credit card in the names of C.F. and GoGreen Farms was over $100,000.00 when it was discovered by C.F. The loan application submitted to TVT Capital shows the defendant and C.F. as each owning 50% of GoGreen Farms. The Loan amount was $100,000.00, with interest of $46,000.00 resulting in a total repayment amount of $146,000.00. A Virginia State Corporation Commission document was provided to TVT Capital as part of the loan application. The document titled "Certificate of Entity Conversion," indicated C.F.'s shares in GoGreen Farms, Inc. to be 320. This contrasted with the document titled "Unanimous Consent Proceedings of the Shareholders of GoGreen Farms, Inc." that CLEMONS previously provided to CF showing her ownership being five (5) shares. The "Certificate of Entity

Conversion," contained a signature page dated July 6, 2021, with C.F. and the defendant's signatures. C.F. did not sign this document.

    4. Money Laundering in Count Five

With respect to Count Five of the Indictment, on or about November 26, 2021, the defendant applied for a credit card from American Express (account number 7-71000) by using C.F.'s personally identifying information without her consent. As part of the credit application process, the defendant submitted a line of credit application from Suffolk, Virginia, in the Eastern District of Virginia, that resulted in interstate wires of information to American Express in New York. As a result of this wire fraud, the defendant obtained more than $100,000 of credit from American Express, all of which was drawn against C.F.'s personal information.

On or about November 30, 2021, the defendant engaged in a monetary transaction in criminally derived property by making a purchase in an approximate amount of $30,540.35 from Produce Source Partners in Ashland, Virginia.

    5. Aggravated Identity Theft in Count Thirteen

With respect to Count Thirteen of the Indictment, on or about November 12, 2021, the defendant used P.C.'s name, social security number, and date of birth on a loan application to Bluevine, Inc.

    6. Additional Relevant Conduct

In addition to the information provided in the Statement of Facts, and recounted above, the Probation Officer's independent investigation identified additional relevant conduct. (PSR at ¶¶ 10 – 18.) This information reveals that the defendant was not truthful when confronted by law enforcement agents. Additional victims, J.B. H.H., and the Virginia Department of Agriculture were also identified. The latter is particularly noteworthy as the defendant, while on bond for the

instant offenses, applied for a grant of $1.17 million dollars, indicating that GoGreen Farms would match $560,500 of the funds. The defendant continued with this fraudulent application for months, even recruiting his brother to represent him in the process while he was incarcerated. The defendant told his brother that he received the grant funds it would be of benefit to him in the sentencing process.

As a result of the defendant's offenses, he faces a total offense level of 25, based on losses exceeding $1.5 million, substantial financial hardship to two or more victims and the denial of acceptance of responsibility credit. The resulting offense level of 25/III results in an advisory range of 70 to 87 months, plus 24 months consecutive on Count Thirteen.

## THE DEFENDANT'S BACKGROUND

These offenses are not the first that have brought this defendant before a sentencing court. He is a fraud recidivist with a demonstrated propensity for defying court requirements. He is a Criminal History Category III, but this is somewhat understated as convictions for contributing to the delinquency of a minor (2007), reckless driving (2007, 2013, 2022, 2023), grand and larceny (2008) are not counted in his total criminal history score. The defendant has other counted convictions for grand larceny, failure to appeal (both 2010) and embezzlement (2011). This history reveals an individual who has committed acts of criminal fraud in the past and has also shown a disregard for authority pertaining to driving or appearing in court. The defendant also has a series of other charges for contempt and failure to appear.

The defendant has been a long resident of the Tidewater area with a family that has supported him and continues to do so. The defendant also has two children that he has supported. The defendant has no serious recurring physical, mental health or substance abuse issues.

The defendant attended various higher-level schooling and obtained (by his representation both associates and bachelor's degrees. The defendant's employment over the past several years has been linked with the instant offenses. The defendant reported that he earned a significant salary and clearly the defendant was able to amass some significant assets.

## OBJECTIONS TO THE PSR

The defendant, in his Position Paper filed on February 5, 2025, raises three objections to the advisory guideline calculation, related to (1) the losses attributed to him; and (2) the lack of acceptance of responsibility credit. Each of these objections lacks merit.

To the extent the defendant, in raising various objections, disputes facts set forth in the PSR, "[t]he defendant has an affirmative duty to make a showing that the information in the presentence report is unreliable, and [to] articulate the reasons why the facts contained therein are untrue or inaccurate." *See United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990) (citing *United States v. Mueller*, 902 F.2d 336, 346 (5th Cir. 1990) (finding that the defendant presented no evidence in rebuttal to the PSR)); *see also United States v. Randall*, 171 F.3d 195, 211 (4th Cir. 1990). Without an affirmative showing that the PSR is inaccurate, the Court is "free to adopt the findings of the [presentence report] without more specific inquiry or explanation." *Terry*, 916 F.2d at 162 (quoting *Mueller*, 902 F.2d at 346). The burden is on the defendant to establish inaccuracy or unreliability. The government bears the burden of showing that a sentencing enhancement applies to undisputed facts by a preponderance of the evidence. *United States v. Steffen*, 741 F.3d 411, 414 (4th Cir. 2013).

<u>UNRESOLVED OBJECTION TO LOSS AMOUNT</u>

The defendant first claims that the loss amounts attributed to him should exclude VDACS and the $1.17 million in the fraudulent grant application. The defendant asserts that this loss amount is speculative.

As set forth in the PSR and the attached VDACS Grant Summary, VDACS application contained materially false representations and omissions to mislead VDACS to provide the defendant money under false pretenses, representations, and promises.

- The defendant represented that Go Green Farms was a nonprofit. The defendant is right that GoGreen was recognized as a nonprofit in June 2021, but he never filed the annual tax returns (Form 990) to keep the status. The original notice of his nonprofit status specifically warned the defendant that his status would be revoked if he didn't file Forms 990 on an annual basis. So the representations to VDACS were false or at best highly misleading.

- The defendant made VDACS think the business was up and running. As the defendant indicates IRS-CI interviewed VDACS and Keisha Williams said: Williams' impression of CLEMONS' description of his business, GoGreen, was that GoGreen was an up and running business, and that he wanted to expand his operations. Williams said she was quite impressed with how the conversation went with CLEMONS.

- The defendant submitted this application when he was in prison. The business was not up and running or capable of being conducted.

- Clemons listed the physical address of the business as #### Moreland in Suffolk. This was his girlfriend's house. There was no physical plant for Go Green in 2023. The business was defunct.

GoGreen Farms was initially the produce company described in the Statement of Facts. When that failed, he pivoted to a marijuana-related business, but that was not the business he was representing to VDACS was up and running to get the grant. The VDACS grant was to fund food infrastructure in Virginia, not the sale of drugs.

The Court must make only a reasonable estimate of the loss involved. Section 2B1.1 provides that defendants convicted crimes of fraud and deceit, are subject to an enhancement based

8

on the amount of the loss resulting from the offense conduct. *See generally* § 2B1.1(b)(1). Pursuant to U.S.S.G. § 2B1.1, "loss" is defined as "the greater of actual loss or intended loss." *United States v. Allmendinger*, 706 F.3d 330, 341 (4th Cir. 2013) (quoting U.S.S.G. § 2B1.1 cmt. n. 3(A)). "'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense." *Id.* "[I]ntended loss is 'the pecuniary harm that was intended to result from the offense' and 'includes intended pecuniary harm that would have been impossible or unlikely to occur.'" *United States v. Bowling*, 566 F. App'x 202, 206-07 (4th Cir. 2014) (quoting U.S.S.G. § 2B1.1 cmt. n.3 (A)(i)-(ii) (2012)). Pecuniary harm is "reasonably foreseeable" if "the defendant knew, or under the circumstances, reasonably should have known" that such harm "was a potential result of the offense." U.S.S.G. § 2B1.1, app. n.3(A)(iv).

As set forth in the PSR, the intended losses related to the false VDACS application are properly attributed to the defendant as relevant conduct as they occurred in both the course of the defendant's operation of the GoGreen Farms scheme and in his effort to avoid full responsibility for other parts of the scheme by continuing the charade of the business. As such, this objection should be denied.

### UNRESOLVED OBJECTION TO SUBSTANTIAL FINANCIAL HARDSHIP

The defendant next contends that J.B. and H.H. should not be considered victims of his fraud. The guidelines define "victim" as "any person who sustained any part of the actual loss" as a result of the offense. U.S.S.G. § 2B1.1, cmt. n.1. Victims can be individuals or entities.

The defendant contends that although J.B. and H.H. sustained losses, there is not evidence that the defendant intended to defraud them. The government's position, however, is that the grant fraud to VDACS and the fraud on investment victims all have GoGreen Farms as the constant. The

9

defendant was in effect selling the idea of GoGreen Farms to all the victims, including C.F., J.B., H.H., and VDACS. This was related and an ongoing offense.

As described in the PSR and the attached summary, the defendant gave J.B. a check from a closed account at Fulton Bank. J.B. told the defendant that the check bounced because the account was "not active." The defendant confirmed Fulton "froze the account." Two weeks after the defendant was told the Fulton check to J.B. bounced because the account was not active, the defendant wrote a check from the same closed Fulton account to H.H. The defendant also wrote a check to H.H. from a separate account at NFCU that was also closed.

Specifically, in April of 2024 J.B. gave CLEMONS a $5,000.00 cashier's check written out to GoGreen Farms as an investment loan for the vending booth at a cannabis festival in Washington, D.C. CLEMONS told J.B. he would give J.B. his money back with interest within about a week. On April 25, 2024, CLEMONS wrote J.B. a $8,920.00 check from Fulton Bank.

On May 8, 2024, J.B. communicated with CLEMONS via text message that the check had bounced and that he was told the account was not active. CLEMONS' response to J.B. was "Yes I'm on the phone with Fulton, they froze the account for suspicious activity. This happened on last Thursday! If I would've gotten it to you like I was supposed to you'd be good! I'm totally sorry I had no clue. I'll call you shortly."

But, then, on May 17, 2024, CLEMONS wrote H.H. a $9,000.00 check from a closed account at Navy Federal Credit Union under GOGREEN FARMS AND GREENHOUSES INC.. On May 23, 2024, CLEMONS wrote H.H. a $9,000.00 check from the same closed account at Fulton Bank from which CLEMONS wrote the April 2024 check to J.B. Analysis of the business accounts at NFCU indicates that the accounts were overdrawn or at zero balance since December of 2023. Accordingly, looking at this series of transactions, it is clear by a preponderance of the

10

evidence that the defendant knew he was issuing bad checks to J.B. and H.H. Accordingly, such losses are properly attributed to him.

### UNRESOLVED OBJECTION TO ACCEPTANCE OF RESPONSIBILITY

Lastly, the defendant objects to not receiving credit for acceptance of responsibility. The defendant contends that he pled guilty and expressed remorse. The defendant contends that additional fraudulent conduct he committed on bond is only alleged and that this should not interfere with his credit.

Section 3E1.1 provides for a decrease of two levels in the offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense[.]" U.S.S.G. § 3E1.1. According to the commentary in the guidelines, "[a] defendant who enters a plea of guilty is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1, cmt. n.3. Evidence of a guilty plea is evidence of acceptance of responsibility, but it "may be outweighed by conduct of the defendant which is inconsistent with an acceptance of responsibility." *Id*. The defendant has the burden to prove, by a preponderance of the evidence, that he is entitled to a reduction for "acceptance of responsibility." *United States v. Harris*, 882 F.2d 902, 907 (4th Cir. 1989). In considering whether the defendant qualifies for acceptance credit, the guidelines reference a number of criteria, including, but not limited to: (1) whether the defendant truthfully admitted conduct comprising the offense of conviction; (2) whether the defendant withdrew from criminal conduct voluntarily; (3) the timeliness of the acceptance; and (4) post offense rehabilitative efforts. U.S.S.G. § 3E1.1., cmt. n.1.

The Fourth Circuit has repeatedly held that a guilty plea does not necessarily entitle a defendant to a reduction for acceptance. *United States v. McKenzie-Gude*, 671 F.3d 452, 463 (4th Cir. 2011); *United States v. Nale*, 101 F.3d 1000, 1005 (4th Cir. 1996). The Fourth Circuit

11

affirmed sentencing courts that withdraw acceptance of responsibility where the defendant fails to admit the conduct comprising the offense of conviction or otherwise disputes relevant, material facts at issue. *United States v. Burns*, 781 F.3d 688, 692-93 (4th Cir. 2015) (upholding denial of acceptance of responsibility where defendant disputed relevant conduct) (citing U.S.S.G. § 3E1.1 cmt. n. 1(A)); *United States v. Hill*, 254 Fed. Appx. 221 (4th Cir. 2007) (affirming loss of acceptance of responsibility where a defendant downplayed the extent of his criminal activity); *United States v. Falesbork*, 5 F.3d 715, 721-22 (4th Cir. 1993) (denying acceptance of responsibility where the defendant disputed material aspects of the crime of conviction).

The United States agrees with the Probation Officer that the defendant has not met his burden to receive acceptance of responsibility credit in this case. As outlined in the PSR, the defendant continued to defraud investors while on bond (J.F. and H.H.). He also made a false application to VDACS. This continued criminal conduct, both while on bond and while incarcerated, does not evince a voluntary termination or withdrawal from criminal conduct. Accordingly, the defendant is not entitled to acceptance of responsibility credit.

## POSITION ON SENTENCING AND ARGUMENT

The United States recognizes that a sentencing court may not presume that a sentence within the advisory guideline range is reasonable; however, the guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Title 18, United States Code, Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. The

United States respectfully requests that the Court impose an advisory sentence on Count Five, with a consecutive 24 months on Count Thirteen.

*First*, the nature and circumstances of this offense are serious. The defendant defrauded friends and investors not only of money, but of their identifying information – which is a further violation with various untold consequences for these victims. And not only did the defendant use the information of others to benefit himself, he doubled down on this crime by lying about it to the victims – adding further levels to the deception.

*Second*, the defendant has a history of not only criminal conduct, but fraudulent criminal conduct. He has convictions for larceny and embezzlement and yet his fraudulent conduct has only grown in scope and tenure. The defendant's return to criminal conduct while on bond is only further indication of his propensity to continue to commit crimes of deceit.

*Third*, the defendant has attempted to legitimize his post-guilty plea conduct, instead of admitting his continued criminal activity. His jail calls suggest a grudging plea of guilty done only to try and obtain a more favorable sentence. The defendant's failure to admit to the full scope of his misdeeds is aggravating.

*Fourth*, the Court should consider the need for the sentence to reflect the seriousness of the offense, to afford adequate deterrence, and to protect the public from further crimes of the defendant. As set out above, this case involves a litany of serious crimes. The public must look at the actions of the defendant and know that these offenses will be not tolerated. As for specific deterrence, the defendant has a history of fraudulent criminal conduct. All of this reflects a repeat offender who is unconcerned with the rules and norms that govern our society. Only a significant sentence of incarceration will have any chance of impacting this defendant. A significant sentence is necessary to instill respect for the law and hopefully prevent this defendant from engaging in a

similar course of conduct upon his release. The sentence requested by the United States is the minimum necessary to protect the public and account for the very significant misdeeds of the defendant and stop him from operating businesses in this way.

## CONCLUSION

The defendant is clearly intelligent and resourceful, but he has not been forthcoming about his own misdeeds. His efforts to rationalize his additional post-plea conduct away are reflective of an individual who is not constrained by rules and looks to what benefits him, even at the expense of others. The Court's sentence should provide the necessary pause to these traits.

For the foregoing reasons and others to be provided during the sentencing hearing, the United States respectfully requests the Court impose a sentence within the advisory guideline range, with a consecutive and mandatory two-year sentence to follow.

Respectfully submitted,

Erik S. Siebert
United States Attorney

By: _____/s/_____
D. Mack Coleman
Brian J. Samuels
Virginia State Bar No. 65898
Assistant United States Attorneys
Eastern District of Virginia
Newport News Division
11815 Fountain Way, Suite 200
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
mack.coleman@usdoj.gov
brian.samuels@usdoj.gov

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 5th day of February 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic notification of such filing to the following:

    Chad G. Dorsk

      I HEREBY CERTIFY that on this 5th day of February 2025, I sent a true and correct copy of the foregoing to the following by electronic mail:

    Kalyn M. Monreal
    U.S. Probation Officer
    600 Granby Street, Suite 200
    Norfolk, Virginia 23510

                                            /s/
                                      Brian J. Samuels
                                      Assistant United States Attorney
                                      Eastern District of Virginia
                                      Newport News Division
                                      11815 Fountain Way, Suite 200
                                      Newport News, Virginia 23606
                                      Tel. (757) 591-4000
                                      Fax: (757) 591-0866
                                      Brian.samuels@usdoj.gov